IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| VITO ANTONIO HOEHN, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:22-cv-00194 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| RICK WHITE, *et al.*, | ) | By: Joel C. Hoppe |
|     Defendants. | ) | United States Magistrate Judge |

This civil rights case pursuant to 42 U.S.C. § 1983 was filed by Vito Antonio Hoehn, a prisoner in the custody of the Virginia Department of Corrections ("VDOC"), proceeding *pro se*. Hoehn asserts several types of claims, all stemming from his being denied outside recreation and the ability to exercise outside of his cell for three months—and counting—at the time he filed his complaint. He names as defendants the warden of Red Onion State Prison ("Red Onion"), Rick White, Assistant Warden Shannon Fuller, and Unit Manager J. Gibson. He also names C. Meade, the institutional ombudsman, and Curtis Parr, the regional ombudsman, both of whom were involved in addressing Hoehn's grievances about the denial of recreation.[1]

The case is before me by virtue of the parties' consent. *See* 28 U.S.C. § 636(c)(1); ECF No. 23. Pending before the Court is Defendants' motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. Plaintiff filed an opposition, Defendants filed a reply, and the motion is ripe for disposition. For the reasons set forth herein, the Court will grant the motion in part and deny it in part.

---

[1] Hoehn's complaint does not specify whether the claims are being brought against defendants in their official or individual capacities. Notably, though, Hoehn does not seek any injunctive relief, only damages. But state officials acting in their official capacities are not considered "persons" under § 1983, and the Eleventh Amendment precludes any official-capacity claims for damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, any claims against these defendants in their official capacities would be subject to dismissal. Accordingly, the Court analyzes his claims herein as being brought against defendants only in their individual capacities.

I. Background[2]

Hoehn alleges that, beginning on January 3, 2022 and continuing through the filing of his complaint in early April 2022, he was denied all opportunity to exercise outside of his cell and denied all outside recreation. The denial occurred in several different time-periods. First, from January through February 9, he and the other "re-entry inmates"[3]—along with all other Red Onion inmates—were deprived of outside recreation from January 1, 2022 until February 9, 2022, a period of about a month, all in an attempt to contain a COVID outbreak at Red Onion. During this period, Hoehn received one hour of inside recreation per day, but this recreation time did not allow any exercise. Instead, because of security precautions associated with their security level, the re-entry inmates were effectively denied all opportunities for out-of-cell exercise. Specifically, even when they were allowed out of their cells for inside recreation, they were in restraints that "confin[ed him] to a sitting position at a table." (Compl. at 4.)

Then, from February 9 to February 24, a modified procedure was implemented where all inmates were supposed to be given three hours of out-of-cell time per day, and one of those hours was to consist of outside recreation. Hoehn alleges, though, that he and the other re-entry inmates were not given any outside recreation and were not permitted to exercise, either, as they were chained and handcuffed to a table during their inside recreation time. His complaint alleges that this deprivation was ongoing as of April 2022, when he filed his lawsuit.

---

[2] The facts in this section come from Hoehn's complaint, ECF No. 1, and documents attached to the complaint and incorporated by reference. *See* Fed. R. Civ. P. 10(c).

[3] Defendants indicate that Hoehn's use of the term "re-entry inmates" refers to inmates who are classified at the highest security levels (either S or 6) and are housed in the Restorative Housing Unit. Re-entry inmates participate in programming to prepare them for re-entry into a prison's general population. Defs.' Mem. Supp. Mot. Dismiss 2 n.2, ECF No. 21. Hoehn describes them as individuals with 24 months or less before release from prison who are housed in a re-entry pod for programming to prepare them for release from prison. He claims that the restrictions largely equate to the conditions of housing in Administrative Segregation. Pl.'s Opp'n to Mot. Dismiss 2, ECF No. 27.

Hoehn asserts claims under the First, Eighth, and Fourteenth Amendments. Hoehn contends that the denial of outside recreation, apparently both before and after the COVID-19-related restrictions, constituted an Eighth Amendment violation by all defendants. He also claims that, in the period after normal operations resumed, the difference in treatment between him and other inmates with the same security level violated his rights under the Equal Protection Clause of the Fourteenth Amendment. He primarily blames Warden White, Assistant Warden Fuller, and Unit Manager Gibson for these violations, although he suggests that the decisions denying outside recreation were made by Gibson. As to Meade and Parr, Hoehn posits that they also violated his rights under the Due Process Clause of the Fourteenth Amendment when they denied his grievances on this issue and failed to log them in the grievance system.

For relief, Hoehn asks that his "filing fees . . . be paid in full." Compl. 10. He also seeks punitive damages in the amount of $5,000 for each violation by each defendant and what he calls "nominal damages" in the amount of $2,500 for each violation by each defendant. *Id.*

## II. Discussion

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). In considering the motion, a court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions,

"unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. In ruling, the "court[] must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," such as "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

B. First Amendment Claims

Defendants correctly note that, although Hoehn couches some of his claims as First Amendment claims, he has not identified a First Amendment right that Defendants allegedly violated. Instead, he appears to mislabel Fourteenth Amendment "equal protection" claims as First Amendment claims. Hoehn admits the mistake in his opposition. Pl.'s Opp'n to Mot. Dismiss 1, ECF No. 27. Thus, to the extent his complaint is intended to assert First Amendment claim (which includes Claims 1, 7, 10, 13, and 16), those claims will be dismissed, but the Court treats his Equal Protection claims as being brought pursuant to the Fourteenth Amendment.

C. Eighth Amendment Conditions-of-Confinement Claim

Hoehn asserts Eighth Amendment claims in Claims 2, 3, 5, 6, 8, 9, 12, 14, 15, and 17.[4] *See generally* Compl., ECF No. 1. The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But "the Constitution

---

[4] Hoehn also references the Eighth Amendment in Claims 7 and 13, but those allege violations of the Equal Protection Clause, so the court construes them as Equal Protection claims.

4

does not mandate comfortable prisons," and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347–49.

To plead an unconstitutional conditions claim, a prisoner must set forth facts showing that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). To satisfy the second, the prisoner must show that a defendant was actually aware of a serious risk of significant harm to the prisoner and disregarded it. *Id.* This is an "exacting standard." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

In their motion to dismiss, Defendants argue that Hoehn's claims fail both because his allegations fail to satisfy either element of a conditions-of-confinement claim and also because he has failed to allege sufficient personal involvement by Defendants so as to state a claim under § 1983. *See generally* Defs.' Mem. Supp. Mot. Dismiss, ECF No. 21.

The denial of exercise opportunities, particularly for an extended period of time, can give rise to an Eighth Amendment violation. *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) (explaining that while the denial of out-of-cell exercise opportunities is not *per se* unconstitutional, a "complete deprivation of exercise for an extended period of time violates [the] Eighth Amendment"). In *Mitchell*, the court concluded that seven months without out-of-cell exercise could potentially violate constitutional standards and that officials were not entitled

5

to qualified immunity on the issue. *Id.* at 191–93; *see also Lyles v. Stirling*, 844 F. App'x 651, 654 (4th Cir. 2021) ("Denying an inmate out-of-cell exercise for 10 months is objectively serious under the Eighth Amendment.").

"In considering the totality of the circumstances surrounding the denial of exercise, [the court must] look at the 'overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities.'" *Lyles*, 844 F. App'x at 653 (quoting *Mitchell*, 954 F.2d at 191).

To summarize the allegations in Hoehn's complaint, he was denied all outside recreation and was given no opportunities to exercise outside of his cell from January 3 through early April 2022, and those denials are ongoing. Moreover, Hoehn's sworn opposition to the motion to dismiss elaborates that the re-entry inmates did not receive outdoor recreation or opportunities to exercise again until September 1, 2022.[5] Pl.'s Opp'n 4. Thus, for a period of three months as of the filing of the complaint and for a total period of nine months, Hoehn was denied all outside recreation time and denied any opportunity for out-of-cell exercise.

The Court concludes that these facts plausibly satisfy the objective prong of an Eighth Amendment claim. The Fourth Circuit's decision in *Rivera v. Mathena*, 795 F. App'x 169 (4th

---

[5] The Court recognizes that "parties cannot amend their complaints through briefing or oral advocacy." *See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). Thus, the allegations in Hoehn's sworn opposition, which provide the date the deprivation ended and establish a nine-month period in which Hoehn was denied all out-of-cell exercise, are not part of the complaint. *See id.* But the complaint itself indicates that the deprivation of exercise and outside recreation was ongoing, Compl. 4, and so Hoehn plausibly alleges a longer period of deprivation than three months. Moreover, even if the Court were to dismiss the claim on the ground that a three months' denial of all exercise does not satisfy the objective prong of the Eighth Amendment, it would grant leave to amend. Upon amendment, of course, the period of denial would be alleged as nine months, which would be sufficient to survive a motion to dismiss. The Court concludes that dismissing a complaint, which was timely and promptly filed, because an ongoing violation had not yet continued for long enough would be a waste of the Court's and party's resources and would cause unnecessary delay in the resolution of Hoehn's claims.

Cir. Nov. 19, 2019), in which the Fourth Circuit reversed a district court's grant of summary judgment to prison officials on a similar claim, is instructive. There, plaintiff alleged that during two periods of time (each consisting of about three months), he "went about eight weeks without a shower and approximately two months without any outdoor recreation. Most weeks during those periods, he received zero, one, or two opportunities each week to exercise." 795 F. App'x at 171. The Fourth Circuit held that these facts were sufficient for his Eighth Amendment claim to survive summary judgment. *Id.* at 176. It reasoned that "[t]he combination and duration of the shower and exercise deprivations were sufficiently lengthy and severe" to satisfy the objective prong. *Id.* at 175. It also noted that a two-month deprivation of both showers and recreation altogether over the course of Rivera's four years in segregation could be sufficient to support an Eighth Amendment claim. *Id.* (discussing *Brown v. Lamanna*, 304 F. App'x 206, 208 (4th Cir. 2008)).

Although this case differs slightly from *Rivera* and *Lamanna* in that it does not involve a deprivation of showers, it involves a denial of *all* exercise opportunities for more than three months as of the filing of the complaint and ultimately for a total of about nine months. As the Fourth Circuit recognized in *Rivera*, the duration of the denial is important. To illustrate, the *Rivera* court explained that restricting exercise to twice per week might not violate the Eighth Amendment "if confined to a relatively short period of maximum confinement," but extended over a period of years and perhaps indefinitely, the outcome "may be quite different." *Id.* at 174 (citations omitted).

Although Hoehn was not denied exercise for "years" or "indefinitely," the denial was longer than each of the two-month periods found sufficient in *Rivera*. And in the *Rivera* case itself and in the example in its opinion, exercise was only restricted to two times per week for

some weeks. For Hoehn, by contrast, no exercise was allowed, as Hoehn was chained to a table whenever permitted inside recreation. Hoehn's situation is therefore more restrictive than in some of the cases cited by Defendants, where at least *some* exercise was offered. *E.g., Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (holding 45 minutes of outdoor exercise per week with no injury suffered did not state an Eighth Amendment claim); *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (same as to one hour of exercise per week outdoors).

Defendants also assert that Hoehn's claims fail because he does not allege that he suffered any injuries as a result of the deprivation of exercise, and they emphasize that his written complaints to prison officials did not reference any injuries. Mem. Supp. Mot. Dismiss 6 (citing *Joyce v. Thomas*, No. 7:07cv00198, 2007 WL 1447902, at *1 (W.D. Va. May 14, 2007)). In *Joyce*, the plaintiff had not identified any injury at all. *Id.* at *1 ("[Joyce] does not allege any actual injury or harm as a result of not being taken outside for recreation."); *see also Muwwakkil v. Johnson*, No. 7:09CV00318, 2010 WL 3585983, at *4 (W.D. Va. Sept. 13, 2010) (granting summary judgment for defendants where plaintiff received some recreation, including outside recreation, and never sought treatment for any resulting injury)).

Hoehn's allegations are distinguishable from these cases. First of all, an Eighth Amendment claim can be based on a grave risk of significant physical or emotional harm, not just an actual injury. *Shakka*, 71 F.3d at 166. As the Fourth Circuit recently noted, "It is well-understood that some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." *Lyles*, 844 F. App'x at 654 (citation omitted). Thus, even if Hoehn did not suffer an injury, a complete deprivation of exercise for nine months may well create an unreasonable risk of significant emotional or physical damage.

8

Moreover, Hoehn has alleged an injury, although not in great detail. Specifically, Hoehn's complaint alleges that he suffers from bipolar disorder, for which he takes medicine, and that the lack of ability to go outside has "detrimentally increase[d] his mental health instability." (Compl. 4.) And unlike some other cases—such as *Joyce* and *Muwwakkil*, *supra*, in which the plaintiff had alternative methods for exercising—Hoehn had none. *Compare Joyce*, 2007 WL 1447902, at *1 (noting plaintiff had "access to exercise equipment and space to do exercises such as push ups"); *Muwwakkil*, 2010 WL 3585983, at *4 (W.D. Va. Sept. 13, 2010) (describing that during one period, plaintiff was given one hour of daily out-of-cell exercise, with half of the days outside; during another period, he was given one hour of outside recreation each weekday). Indeed, *Joyce* relied on a Fourth Circuit case that held jails may provide space for indoor recreation as an alternative to outdoor recreation where no medical evidence shows that an inmate needs outdoor exercise. 2007 WL 1447902, at *1 (citing *Jones v. Kelly*, 900 F.2d 252 (4th Cir. 1990)). Here, Hoehn alleges that no alternative exercise was offered, merely the opportunity to be out of his cell chained to a table.

In short, and on a motion to dismiss, the Court concludes that Hoehn has plausibly alleged facts sufficient to satisfy the objective prong of his claim.

Turning to whether Hoehn has sufficiently pled that any of the defendants were deliberately indifferent, at least the first month of the restriction (January through February 9) implemented restrictions to slow the spread of COVID during an outbreak. If that had been the only period of time at issue, deliberate indifference would have been more difficult to satisfy, if not impossible. But thereafter, the restrictions continued as to the re-entry inmates, and those deprivations continued through September 2022. Unit Manager Gibson, in particular, is alleged to have created and implemented those restrictions. *See* Compl. 3–4. He also was aware of

9

Hoehn's complaints about the inability to exercise, and he responded to a written complaint in early March by saying that, as of February 24, 2022, Hoehn was being offered 4 to 5 hours out-of-cell-time each day. Compl., Ex. A. Hoehn alleges that Gibson knew that he was not being offered outside recreation and was shackled to a table during his out-of-cell time, preventing exercise. This is sufficient to plausibly allege Gibson's deliberate indifference.

As to the other defendants, however, Hoehn has not alleged sufficient facts to show that any of them knew of and disregarded any "grave risk" to his health. *Farmer*, 511 U.S. at 837. As the Fourth Circuit recently explained, especially in the Eighth Amendment context, where "deliberate indifference" requires subjective knowledge of a particular condition and excessive risk posed by it, a prisoner-plaintiff is required to plead "specific factual allegations for each defendant [to] give[] fair notice to *that* defendant of the plaintiff's claim and the underlying factual support." *Langford v. Joyner*, __ F. 4th __, 2023 WL 2335957, at *2 (4th Cir. Mar. 2, 2023) (citations omitted). Collective use of the term "defendants" and general allegations that "defendants" did things or knew things is insufficient to state a claim and warrants dismissal. *Id.*

The court turns first to Warden White and Assistant Warden Fuller, against whom Hoehn alleges only very limited facts. As to Assistant Warden Fuller, Hoehn alleges that it is Fuller's "duty to uphold the security and conditions" at Red Onion. He also states that he sent him a request on February 9, 2022, complaining about the situation, Compl. 8 & Ex. E, but Fuller never responded or took any action to remedy the situation. He makes similar allegations as to Warden White, stating that he sent a written request directly to White, but White, too, failed to take any action to remedy the violation. Compl. 9 & Ex. A.

Notably, though, Hoehn does not allege that either of those individuals actually received or reviewed his complaints. Indeed, the one exhibit he relies on to show he directed a complaint

10

to White contains no indication that White received or viewed it. Instead, it was assigned to Unit Manager Gibson, who responded to it. Likewise, although he includes a notarized statement saying he swears that he sent Fuller a written complaint, he does not allege that Fuller ever received it, nor does he provide any specific details as to what it said. Accordingly, Hoehn has failed to allege that either White or Fuller knew of or disregarded a grave risk to his health.

To the extent he is seeking to hold either White or Fuller liable under a theory of supervisory liability, Hoehn must allege facts sufficient to show (1) that a defendant "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). The facts alleged by Hoehn do not come close to plausibly alleging those three elements. Among other failures, he fails to allege or present any evidence that either defendant had actual knowledge of the facts underlying his claims or of any constitutional violations by staff, or constructive knowledge based on such occurrences being widespread.

With regard to the other two defendants—Meade and Parr—it is "[I]t is well established that a response to a grievance (or failure to respond to a grievance), without more, does not give rise to a constitutional claim." *Johnson v. Clarke*, No. 7:20cv717, 2021 WL 1536585, at *2 (W.D. Va. Apr. 19, 2021); *see also Crawley v. Parsons*, No. 7:15-CV-00647, 2017 WL 2983899, at *6 (W.D. Va. July 12, 2017) (finding that "to the extent that plaintiff's claim against [prison officials] relies on their responses to his after-the-fact grievances, it is unavailing. Plaintiff has no

11

constitutional right to participate in grievance proceedings."); *Brown v. Va. Dep't of Corr.*, No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."). "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (internal citations omitted); *see also Gupton v. Wright*, No. 7:15cv214, 2016 WL 524656, at *3 (W.D. Va. Feb. 8, 2016) (opining that § 1983 claims "concern[ing] nothing more than the responses" individual defendants "made to [the plaintiff's] grievances and appeals . . . do not implicate any constitutionally protected right").

Moreover, Meade's response suggests that she believed that Covid protocols were being lifted and that Hoehn was now receiving adequate out-of-cell time. Meade believed Hoehn's complaint was a request for services, rather than a proper grievance, and rejected the grievance at intake on that basis. There is nothing in Hoehn's allegations or Meade's response to suggest that she believed Hoehn was not able to exercise at all. Likewise, Parr simply upheld Meade's intake decision.

For all the above reasons, Hoehn has adequately pled a violation of the Eighth Amendment only against Gibson and that claim will proceed. His Eighth Amendment claims against all other defendants will be dismissed.

D.  *Fourteenth Amendment Claims*

Hoehn also claims that his "rights to equal protection" were violated, (Claims 1, 7, 10, 13 and 16), and that his rights to due process were violated, (Claims 4 and 11). For their part, Defendants contend that Hoehn has failed to adequately state a constitutional violation of either

his equal protection rights or his due process rights. Defs.' Mem. Support Mot. Summ. J. 12–15. The Court addresses each in turn.

1. *Equal Protection Claims*

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). To prove an equal protection violation, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Id.* (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Two groups of persons are "similarly situated" only if they "are similar in all" relevant respects. *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). Once such a showing is made, then the court will determine "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney*, 293 F.3d at 731 (quoting *Morrison*, 239 F.3d at 654). To succeed on his claim, a prisoner-litigant must demonstrate that the defendant's alleged unequal treatment of similarly situated individuals does not "serve[ ] a legitimate state interest" or is not "rationally related" to any such interest. *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989).

Hoehn has not pled facts sufficient to establish an equal protection claim. His claim fails at the outset because he alleges only that he and other re-entry inmates were treated differently from other inmates who have the same security level, but who are not re-entry inmates. By virtue of that distinction alone, he is not similarly situated to those other inmates. *Cf. Graham v. Stallard*, No. 7:17-CV-00035, 2020 WL 5778790, at *17 (W.D. Va. Sept. 28, 2020) (denying equal protection claim because plaintiff, like other offenders in the VHU (a particular VDOC

13

housing unit) "are not similarly situated to regular general population inmates or to non-VHU offenders with the same security levels"). Moreover, he has failed to allege any facts that would support any finding of a discriminatory purpose. Thus, his equal protection claims fail.

2. *Due Process Claims*[6]

Hoehn asserts due process claims against Meade and Parr, who he alleges failed to adequately handle his grievances. Specifically, he alleges that Meade violated his due process rights by failing to log his grievance and instead treating it as a request for services. Compl. 5. He alleges that Parr violated his due process rights by failing to log his response to Hoehn into the grievance system. Compl. 7.

Even if Meade and Parr should have logged the grievances and failed to, claims arising from the violation of grievance procedures, or from a defendant's response to a grievance, generally do not state a constitutional claim. This is so because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a

---

[6] The Due Process Clause of the Fourteenth Amendment encompasses three types of claims enforceable under § 1983, *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), and the Court treats Hoehn's claims as being one of those types—procedural due process claims. To the extent Hoehn is attempting to assert a substantive due process claim, however, his attempt fails. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that where an explicit textual source of constitutional protection applies to government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. 490 U.S. at 395. Under *Graham*, the Court will not engage in a separate substantive due process analysis, but instead has analyzed Hoehn's allegations under the Eighth Amendment, where they fit comfortably. *See Harper v. C.O. Joseph Barbagallo*, No. 2:14-CV-07529, 2016 WL 5419442, at *10 (S.D.W. Va. Sept. 27, 2016); *Love v. Salinas*, No. 2:11-cv-00361-MCE-CKD, 2013 WL 4012748, at *7 n. 5 (E.D. Cal. Aug. 6, 2013) ("Because Plaintiff's 'failure to protect' claim is based on the Eighth Amendment, no separate discussion of Plaintiff's substantive due process claim . . . is necessary.").

state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."); *Brown v. Va. Dep't of Corr.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."). Thus, neither Meade's actions in finding Hoehn's grievance to be a "request for services" and declining to log it as a proper grievance, nor Parr's decision affirming Meade's intake decision, gave rise to a constitutional claim. His due process claims thus fail.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 20) will be granted in part and denied in part. The Court will deny the motion to dismiss solely as to Hoehn's Eighth Amendment claim against Gibson. The Court will grant it as to all of Hoehn's remaining claims and all other defendants. An appropriate order will be entered.

ENTER: March 16, 2023

Joel C. Hoppe
United States Magistrate Judge